**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1623
_____

JOSE A. RODRIGUEZ, a/k/a Jose Alejandro Rodriguez Rodas,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(Agency No. A095-961-233)
Immigration Judge: Honorable Mirlande Tadal
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 16, 2013

Before: JORDAN, VANASKIE, and VAN ANTWERPEN, *Circuit Judges*.

(Filed: March 19, 2014)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

This matter is before us on a petition for review of an order directing the removal

of petitioner Jose A. Rodriguez based upon his conviction of the crime of unlawful

surveillance in the second degree in violation of New York Penal Law § 250.45(4). The

issue presented by Rodriguez is whether unlawful surveillance in the second degree under New York Penal Law § 250.45(4) is categorically a crime involving moral turpitude. We conclude that any conduct sufficient to sustain a conviction under the statute would be "contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general." *Mehboob v. Att'y Gen.*, 549 F.3d 272, 275 (3d Cir. 2008). Therefore, we will deny the petition for review.

I.

Rodriguez is a native and citizen of Ecuador. The Department of Homeland Security (DHS) adjusted Rodriguez's immigration status to lawful permanent resident on May 9, 2005. On September 29, 2009, Rodriguez was convicted in New York state court of the crime of unlawful surveillance in the second degree under to N.Y. Penal Law § 250.45(4).

N.Y. Penal Law § 250.45(4) reads:

> A person is guilty of unlawful surveillance in the second degree when:
>
> 4. Without the knowledge or consent of a person, he or she intentionally uses or installs, or permits the utilization or installation of an imaging device to surreptitiously view, broadcast or record, under the clothing being worn by such person, the sexual or other intimate parts of such person.

On July 19, 2012, DHS served Rodriguez with a notice to appear before an immigration judge (IJ) for removal proceedings. DHS alleged that Rodriguez was removable under § 237(a)(2)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(i), for having been convicted, within five years of his admission

2

to the country, of a crime of moral turpitude for which a sentence of one year or longer may be imposed. Rodriguez contested his removal, arguing before the IJ that the government had not met its burden of establishing by clear and convincing evidence that his offense was a crime involving moral turpitude. The IJ rejected the challenge, finding that N.Y. Penal Law § 250.45(4) categorically stated a crime of moral turpitude. The Board of Immigration Appeals (BIA) affirmed the IJ's removal decision without opinion.

## II.

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252. Where, as here, the BIA affirms an IJ's decision without opinion, "we review the IJ's opinion and scrutinize its reasoning." *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003). While we "accord *Chevron* deference to the BIA's determination that a particular crime involves moral turpitude," the question of whether we owe such deference to an IJ's determination when the BIA affirms without opinion, is still open. *Partyka v. Att'y Gen.,* 417 F.3d 408, 411 (3d Cir. 2005). "[W]e owe no deference to the IJ's interpretation of a state criminal statute." *Id.* (citing *Knapik v. Ashcroft,* 384 F.3d 84, 88 (3d Cir.2004)). We therefore review *de novo* the IJ's conclusion that Rodriguez was convicted of a crime involving moral turpitude.

## III.

To determine whether an offense qualifies as a crime involving moral turpitude, we apply a categorical approach, looking to the criminal statute of conviction, not the alien's particular offense conduct. *Partyka,* 417 F.3d at 411. Thus, we ascertain whether "the least culpable conduct necessary to sustain a conviction under the statute" would still

qualify as a crime involving moral turpitude. *Id*. "[T]he possibility of conviction for non-turpitudinous conduct, however remote, is sufficient to avoid removal." *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 471 (3d Cir. 2009).

"Morally turpitudinous conduct is inherently base, vile, or depraved; contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general." *Mehboob*, 549 F.3d at 275. "[I]t is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude." *Totimeh v. Att'y Gen.*, 666 F.3d 109, 114 (3d Cir. 2012) (quoting *In re Flores*, 17 I. & N. Dec. 225, 227 (BIA 1980)). "[T]he hallmark of moral turpitude is a reprehensible act committed with an appreciable level of consciousness or deliberation." *Partyka*, 417 F.3d at 414.

## A. The Terms of the Statute

Rodriguez presents two arguments in support of his contention that the statute in question does not categorically state a crime of moral turpitude. First, Rodriguez argues that second degree unlawful surveillance statute is a strict liability offense that does not depend on the wrongdoer's state of mind.[1] Contrary to Rodriguez's assertion, N.Y. Penal Law § 250.45(4) cannot possibly be read to describe a strict liability offense. The statute criminalizes the behavior of a person who "[w]ithout the knowledge or consent of a person, . . . *intentionally* uses or installs, or permits the utilization or installation of an imaging device to surreptitiously view, broadcast or record, under the clothing being

---

[1] Although we have held that strict liability sex offenses may still constitute crimes involving moral turpitude, *Mehboob*, 549 F.3d at 276-77, we have also concluded that the scienter of negligence is insufficient to establish moral turpitude in the context of non-sexual offenses. *Partyka*, 417 F.3d at 414.

worn by such person, the sexual or other intimate parts of such person." (Emphasis added.) Pursuant to N.Y. Penal Law § 15.15(1), when the term "intentionally" appears in a criminal statute, "it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears." Because a person must possess the requisite intent for every element of the statute in order to be convicted of unlawful surveillance in the second degree, the statute contains a scienter requirement that sufficiently limits convictions to persons possessing an "appreciable level of consciousness or deliberation." *Mehboob*, 549 F.3d at 276 (internal quotation marks omitted).

Second, Rodriguez argues that the term "intimate part" is not defined by the statute and that, in other contexts, New York courts have interpreted the term "intimate part" to include non-sexual body parts such as the mouth, navel, and the leg. Rodriguez points to *People v. Rivera*, where a New York court concluded that kissing a person against his or her will could constitute sexual abuse because the mouth is an "intimate part" of the body. 525 N.Y.S.2d 118, 119-20 (N.Y. Sup. Ct. 1988). Rodriguez's reference to how "intimate part" is defined in other contexts, however, is simply irrelevant. The term "intimate part" is, in fact, specifically defined within the unlawful surveillance statute. N.Y. Penal Law § 250.40 defines "[s]exual or other intimate parts" for the purpose of the relevant offense as "the human male or female genitals, pubic area or buttocks, or the female breast below the top of the nipple, and shall include such part or parts which are covered only by an undergarment." Therefore, how New York courts have interpreted the term "intimate parts" in their analysis of other criminal statutes is of

5

no moment to our current analysis. By its own definitional terms, a person could not be convicted under § 250.45(4) for surreptitiously recording another's mouth, navel, or leg.

## B. The Least Culpable Conduct

To support his argument that unlawful surveillance in the second degree is not categorically a crime involving moral turpitude, Rodriguez posits scenarios in which a person's conduct could be sufficient to sustain a conviction under the statute without having been motivated by the pursuit of sexual gratification. Rodriguez puts forward the example of an overzealous security guard who "may outfit a store with imaging devices that allow him to surreptitiously view the sexual or private parts of another under the other's clothing in an obsessive effort to identify shoplifters who hide merchandise under their clothing." (Appellant's Reply Br. 5).

But an offense's characterization as a crime involving moral turpitude does not hinge on that person's subjective motivation. Rather, the inquiry is whether even the least culpable actor imaginable under the terms of the statute would still intentionally commit an act that society finds morally reprehensible. *Partyka*, 417 F.3d at 416. We find abundantly reasonable the IJ's determination that the conduct of any person convicted of § 250.45(4), even if not motivated by the pursuit of sexual gratification, would still transgress widely-held notions of morality. By surreptitiously filming a person's sexual parts beneath their clothing, all persons convicted of § 250.45(4) would have violated another person's ability to make an autonomous decision about the exposure of their most private body parts. It is this intentional disregard for another person's sense of privacy in their covered sexual parts that renders unlawful surveillance

6

in the second degree an offense "contrary to the accepted rules of morality and the duties owed other persons." *Mehboob*, 549 F.3d at 275.

IV.

For the foregoing reasons, we conclude that unlawful surveillance under N.Y. Penal Law § 250.45(4) is a crime involving moral turpitude. Accordingly, we will deny the petition for review of the order of removal.